IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROBERT L. KEY, II,

    Plaintiff,

vs.                                      CASE NO.: 6:04-cv-27-Orl-18KRS

ADVANCE STORES COMPANY
INCORPORATED d/b/a ADVANCE
AUTO STORES,

    Defendant.

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's motion for summary judgment (Doc. 20, filed February 14, 2005), to which Plaintiff responded in opposition (Doc. 32, filed March 7, 2005), and to which Defendant replied (Doc. 35, filed April 11, 2005). Plaintiff Robert L. Key ("Plaintiff" or "Key") brings this case against his former employer, Defendant Advance Stores Company, Inc. ("Defendant" or "Advance") pursuant to 42 U.S.C. § 1981 for alleged discrimination on the basis of race. For the reasons herein stated, the Court grants Defendant's motion for summary judgment.

### I. BACKGROUND

Advance hired Key, a black male, on June 13, 2002 as a full-time employee in its Haines City, Florida store under the supervision of store manager, Steven McBee ("McBee"). On October 20, 2002, Advance promoted Key to the position of Assistant Manager in Training. As a manager, Key was required to deposit monies from the cash register into the office safe, a practice called a "cash drop." The purpose behind such cash drops was to protect the safety of Advance employees and limit potential cash loss. (Bush Aff. ¶ 8.) Advance managers were to

make cash drops whenever the register possessed more than $200. (Bush Dep. at 21; Aycock Dep. at 9-11; Doc. 20 at 3; Ex. 1 at 2.) A violation of the cash drop policy that resulted in a loss provided immediate grounds for termination. (Bush Aff. at ¶ 10; see also Bush Dep. at 24; Aycock Dep. at 15-16.) The store possessed two up-front retail registers and one cash register in the back of the store, used primarily for commercial purchases. (Key Dep. 23-24, 46; Doc. 20 at 5.)

On February 15, 2003, Key worked as the closing manager, a shift that ran from 3 p.m. to 9 p.m. McBee, who served as the opening manager on that day, left the store at approximately 5:30 p.m. Around 7:30 p.m., the store was robbed at gunpoint and approximately $1,679.09 was stolen from one of the two up-front registers (hereinafter "register 1") (Key Dep. at 10, Bush Aff. ¶ 14.) From Key's start time at 3p.m. until the time of the robbery, Key had not made any cash drops. (Key Dep. 28.) Following the robbery, the police arrived to take a report and McBee returned to the store to assist Key. While closing out the cash registers for the day, Key allegedly discovered $3000 in the up-front cash register that had not been robbed (hereinafter "register 2"). (Key Dep. 39-46.) Key further alleges that McBee, before departing from the store at 5:30 p.m., left the $3000 in register 2, which constituted a violation of the cash drop policy. (Doc. 32 at 5, Key Dep. 39-46.) Advance denies that McBee could have left $3000 in register 2, contending that the closing deposit of the store's three registers, made by Key, only amounted to $2,296.12. (Key Dep. at 46; Bush Aff. ¶ 15; Doc. 20 at 7.)

The following day, District Manager Dwayne Aycock ("Aycock") spoke with Key about the incident. (Aycock Dep. at 39.) Over the next few days Lauren Gonzalez ("Gonzalez") of

2

Risk Management investigated the matter. (Doc. 20 at 4.) After conducting her investigation, Gonzalez instructed Aycock to terminate Key for violating the cash drop policy. (Aycock at 13.) Aycock forwarded the instruction to McBee, who notified Key of his termination on February 18, 2003. (Aycock at 13; Doc. 20 at 4.)

Plaintiff alleges that Advance unlawfully terminated him on the basis of race. Plaintiff argues that Advance's discriminatory animus is proven by the fact that Advance fired Keys for a $1,679 cash drop violation but did not terminate McBee, a white Caucasian, who allegedly committed the same violation in the amount of $3000.

## II. DISCUSSION

### A. Summary Judgment

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Id.

The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Matsushita Elec. Ind. v. Zenith Radio Corp., 475

U.S. 574, 587-88 (1986). The moving party may rely solely on his pleadings to satisfy its burden. Celotex, 477 U.S. at 323-24.

When the non-moving party has the burden of proof at trial, the moving party may meet its initial burden in one of two ways. It may support the motion by directing the Court's attention to affirmative evidence "that negates an essential element of the non-moving party's claim." Celotex, 477 U.S. at 331 (Brennan, J., dissenting).[1] Alternatively, the moving party may point out to the court the "absence of evidence to support the non-moving party's case." Id. at 324; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993).

If the moving party shows the absence of a genuine material fact and that it is entitled to judgment, the burden shifts to the non-moving party to make a sufficient showing to establish the essential elements of her case with respect to which she has the burden of proof. Celotex, 477 U.S. at 322. In contrast to the moving party, the non-moving party may not rest solely on her pleadings to satisfy this burden and escape summary judgment. Id. at 324. It must designate evidence within depositions, answers to interrogatories, or admissions that indicates that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50.

## B. 42 U.S.C. § 1981

Plaintiff brings one count of employment discrimination on the basis of race under 42 U.S.C. § 1981. Section 1981 "prohibits intentional race discrimination in the making and

---

[1] Justice Brennan agreed with the plurality's analysis of the standard for summary judgment in Celotex. He dissented on the basis of the facts of the case.

4

enforcement of public and private contracts, including employment contracts." Ferrill v. Parker Group, 168 F.3d 468, 472 (11th Cir. 1999).[2] Section 1981 requires proof of *intentional* discrimination. Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982); Brown v. Am. Honda Motor Co., 939 F.2d 946, 949 (1991). Discriminatory intent can be established through either direct or circumstantial evidence. See U.S. Postal Serv. Bd. of Gov. v. Aikens, 460 U.S. 711, 714 n.3 (1983). In this case, where Key seeks to prove intentional discrimination through circumstantial evidence, the Court applies the familiar three-part, burden-shifting analysis promulgated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Tex. Dept. of Comm. Affairs v. Burdine, 450 U.S. 248 (1981).[3] Under this framework, the plaintiff has the initial burden of establishing a prima facie case by a preponderance of the evidence. Burdine, 450 U.S. at 252-53. If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for the employee's rejection." Id. at 253 (citation and internal quotation omitted). If the defendant offers a legitimate, nondiscriminatory reason, the plaintiff can avoid summary judgment only by producing sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered reasons is pretextual. Hendricks v. Baptist

---

[2] Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." Ferrill v. Parker Group, 168 F.3d 468, 472 (11th Cir. 1999). Section 1981 provides, in relevant part, that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

[3] The court notes that in McDonnell Douglas, the Supreme Court articulated the three-part prima facie test for claims brought under Title VII. The same elements of a *prima facie* case and allocation of burdens in Title VII claims are used in Section 1981 claims as well. See Hendricks, 278 F. Supp. 2d at 1286 (M.D. Ala. 2003) (citing Richardson v. Leeds Police Dept., 71 F.3d 801, 805 (11th Cir. 1995); Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1060 (11th Cir. 1994); Howard v. BP Oil Co., Inc., 32 F.3d 520 (11th Cir. 1994)).

AO 72A
(Rev.8/82)

Health Servs., 278 F. Supp. 2d 1276, 1287 (M.D. Ala. 2003) (citing Chapman v. AI Transport, 229 F.3d 1012, 1037 (11th Cir. 2000).

### C. Key Fails to Establish a Prima Facie Case

To establish a prima facie case of racial discrimination, Plaintiff must show that: (1) Key belongs to a racial minority; (2) Key was subjected to adverse job action; (3) Key's employer treated similarly situated employees outside his classification more favorably; and (4) Key was qualified to do the job. Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (citing Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997). Key satisfies the first and second requirements: Key, a black male, is a member of a racial minority and his termination constitutes an adverse job action. The fourth requirement, whether Key was qualified to do the job, is intertwined with the issue of whether his termination was pretextual and thus will not be examined at the prima facie stage. See Holifield v. Reno, 115 F.3d 1555, 1562 n.3 (11th Cir. 1997) (citing Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 n.4 (7th Cir. 1994); Weldon v. Kraft, Inc., 896 F.2d 793, 798-99 (3rd Cir. 1990)); see also Rosenfield v. Wellington Leisure Prods., Inc., 827 F.2d 1493, 1495 n.2 (11th Cir. 1987) (noting in dicta that, in the age discrimination context, "the *McDonnell Douglas* test has been modified in cases where a plaintiff was discharged from a previously held position (as opposed to failure to hire or to promote cases)" by deleting the prong requiring proof of qualification.); Young v. Gen. Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988) (same). The Court now turns to the remaining prima facie requirement: whether Key has shown that a similarly situated, non-black employee received favorable treatment.

AO 72A
(Rev.8/82)

Key argues that he was similarly situated to McBee, a white male, who possessed managerial responsibility and allegedly committed a similar cash drop violation for which he was not punished. "In order to meet the comparability requirement a plaintiff is required to show that he is similarly situated in all relevant aspects to the non-minority employee." Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001). Key's argument fails in at least two ways.   First, assuming that McBee violated the cash drop policy by leaving $3000 in register 2, a significant factor still distinguishes McBee from Key: McBee's alleged violation did not result in a cash loss. Key admits that the $3000 that McBee allegedly left in cashier 2 was not stolen and therefore did not result in a cash loss. (Key Dep. at 36.) Ted Bush, Advance's Regional Human Resource Manager, stated that "[a] violation of a cash handling policy *that results in a cash loss* is grounds for immediate termination." (Bush Aff. at ¶ 10; see also Bush Dep. at 24; Aycock Dep. at 15-16.) (emphasis added.) Bush explains that where there is no cash loss, a violation is generally addressed by "a corrective action or a final corrective action." (Bush Dep. at 24; Aycock Dep. at 15-16.) There is no evidence in the record showing that Advance has ever fired an employee for a single violation of the cash drop procedure without the resulting cash loss. The Eleventh Circuit has stated, "If an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984) (citation omitted). Because McBee's alleged violation did not result in cash loss—one of the two company requirements for immediate termination—Key has failed to show that he and McBee were similarly situated.

Second, even if this Court were to assume that 1) McBee did violate the cash drop

7

policy and 2) such a violation would have required termination, there is no evidence that the Advance decision makers had actual knowledge of the violation. It is undisputed that the decision to terminate Key came from the instruction of Gonzalez, a member of the Risk Management Department. There is no evidence, however, that Gonzalez had knowledge of McBee's alleged violation or that Gonzalez discovered the violation while conducting her investigation. Aycock, Key's district manager, testified that he never knew of McBee's alleged violation until the litigation process began. (Aycock Dep. at 15, 27.) In fact, Key testified that he never reported McBee's violation. (Key Dep. at 41-42.) There is no evidence, therefore, that anyone—other than Key—had knowledge of McBee's alleged violation. Absent a showing that Advance decision makers were aware of, or consciously overlooked, McBee's allegedly similar violation, this Court cannot find that McBee and Key were similarly situated. See Jones v. Gerwens, 874 F.2d 1534, 1541-42 (11th Cir. 1989) (holding that a prima facie case was not established where a black officer plaintiff failed to show that employer decision makers were aware of, or consciously overlooked, the alleged similar violations by white officers). For the above reasons, Key fails to show, by a preponderance of the evidence, that Advance treated a similarly situated employee outside Key's classification more favorably. Key fails, therefore, to establish a prima facie case of discrimination.

D. Key Fails to Show that Advance's Non-discriminatory Reason was Pretextual

Even if Key had established a prima face case, Key would still be unable to escape summary judgment. Advance provides a legitimate, non-discriminatory reason for Key's termination: Key's cash drop violation resulted in a cash loss, which provides grounds for immediate termination. It is Key's burden, therefore, to establish that the reason is pretextual.

8

Burdine, 450 U.S. at 253. "To show that the employer's reasons were pretextual, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Cooper v. S. Co., 390 F.3d 695, 725 (11th Cir. 2004) (citation and internal quotation omitted).

In an attempt to show pretext, Plaintiff relies on Key's testimony concerning the alleged $3000 left in the cash register that did not cause the termination of McBee. Key's argument is insufficient for the above-mentioned reasons: 1) Key fails to account for the fact that McBee's alleged violation did not result in a cash loss; and 2) Key fails to show that the Advance decision makers were aware of McBee's alleged violation. Key fails, therefore, to present a genuine issue of fact as to the truth of Advance's proffered reason to terminate Key. Advance is accordingly entitled to summary judgment.[4]

---

[4] Plaintiff also makes much of the fact that Key testified to being unaware of certain Advance policies. Key claims that he was unaware of his responsibility to assure that registers did not contain more than $200 in cash and that a cash drop violation resulting in cash loss provided grounds for immediate termination. (Doc. 32 at 2-4.) Advance, on the other hand, contends that Key received thorough training on the cash drop procedure and that Key must have understood his responsibilities under the policy because Key had been "written up" for a cash drop violation on a previous occasion. The parties' dispute on the question of Key's knowledge of Advance policy, however, is irrelevant. The Court's sole concern is whether Advance possessed racial discriminatory animus in its decision to terminate key. The fact that Key was unaware of Advance policy, without more, is not pertinent to whether Advance acted with discrimination.

9

## III. CONCLUSION

The Court finds that the undisputed facts as well as the reasonable inferences drawn therefrom do not establish a genuine issue of material fact that would justify bringing this lawsuit to trial. Based on the foregoing discussion and upon careful consideration of the record and all relevant law, it is **ORDERED** and **ADJUDGED** that Defendant's Motion for Summary Judgment is **GRANTED**. All other pending motions are **DENIED** as moot. The Clerk of the Court is directed to **ENTER JUDGMENT** on behalf of Defendant Advance and **CLOSE THE CASE**.

**DONE** and **ORDERED** in Orlando, Florida on this _25_ day of April, 2005.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record