# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ROBERT L. KEY, II,**

**Plaintiff,**

**-vs-** **Case No. 6:04-cv-27-Orl-18KRS**

**ADVANCE STORES COMPANY INCORPORATED,**
**d/b/a Advance Auto Stores,**

**Defendant.**
______________________________________/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on Defendant's Motion for Attorneys' Fees, Doc. No. 50, and Plaintiff's Response to Defendant's Motion for Fees and Costs, Doc. No. 51.

## I. PROCEDURAL HISTORY.

On December 23, 2003, Plaintiff Robert L. Key, II, filed a complaint in state court alleging that Defendant Advance Stores Company, Inc., d/b/a Advance Auto Stores ("Advance") terminated his employment on the basis of race in violation of 42 U.S.C. § 1981. Doc. No. 2. On January 9, 2004, Advanced removed the case to this Court. Doc. No. 1.

The parties conducted discovery and, on February 14, 2005, Advance filed a motion for summary judgment. Doc. No. 20. The Honorable G. Kendall Sharp, the presiding district judge, granted this motion on April 25, 2005. Doc. No. 40. Subsequently, Advance filed the present

motion for attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, and Federal Rule of Civil Procedure 11. Doc. No. 50. In support of its motion, Advance filed several exhibits. Key filed a response in opposition to the motion. Doc. No. 51. Judge Sharp referred the motion for attorneys' fees and litigation expenses to me for issuance of a report and recommendation.

## II. STATEMENT OF FACTS.

I draw these facts from Judge Sharp's summary judgment order. Doc. No. 40. On June 13, 2002, Advance hired Key, an African-American male, as a full-time employee in its Haines City, Florida store under the supervision of store manager Steven McBee. Doc. No. 40 at 1. On October 20, 2002, Advance promoted Key to the position of Assistant Manager in Training. *Id.* As a manager, Key was required periodically to deposit monies from a cash register into an office safe, a practice called a "cash drop." *Id.* The purpose of the cash drop was to protect the safety of Advance employees and limit potential losses of cash to theft. *Id.* Advance managers were to perform a cash drop whenever a register contained more than $200.00. *Id.* at 2. Under Advance's rules, a violation of the cash drop policy that resulted in a loss was grounds for immediate termination. *Id.* The Advance store where Key worked had three cash registers: two in the front of the store for retail purchases and one in the back of the store for commercial purchases. *Id.*

On February 15, 2003, Key worked as the closing manager, which required him to work from 3:00 p.m. to 9:00 p.m. *Id.* McBee, who served as the opening manager on that day, left the store at approximately 5:30 p.m. *Id.* At approximately 7:30 p.m., the store was robbed at gunpoint and $1,679.09 was stolen from one of the registers in the front of the store. *Id.* Following the robbery, the police arrived to take a report, and McBee returned to the store to assist

Key. *Id.* While closing out the cash registers for the day, Key allegedly discovered $3,000.00 in the front-of-the-store register that had not been robbed. *Id.* Allowing this much cash to remain in the register constituted a violation of the cash drop policy. *Id.* There was some dispute as to who, between McBee and Key, was responsible for the accumulation of this cash. *Id.* Advance denies that McBee could have left $3,000.00 in the register, contending that the closing deposit of the store's three registers, made by Key, only amounted to $2,296.12. *Id.*

The following day, District Manager Dwayne Aycock spoke with Key about the incident. *Id.* Over the next few days, Lauren Gonzalez, an investigator with Advance's risk management department, investigated the incident. *Id.* at 2-3. After conducting her investigation, Gonzalez instructed Aycock to terminate Key for violating the cash drop policy. *Id.* at 3. Aycock forwarded this instruction to McBee, who notified Key of his termination on February 18, 2003. *Id.*

Key alleged that Advance unlawfully terminated him on the basis of race. *Id.* He further argued that Advance's discriminatory animus is proven by the fact that Advance fired Key for a $1,679.00 loss that resulted from a cash drop violation, but Advance did not terminate McBee, a Caucasian individual, who committed the same cash drop violation in the amount of $3,000.00. *Id.*

Judge Sharp granted Advance's motion for summary judgment, holding that Key had failed to establish a *prima facie* claim of employment discrimination. *Id.* at 6. Specifically, Judge Sharp noted that Key failed to allege, or offer any support, in support of the notion that McBee, or any non-African-American employee of Advance, had not been terminated for a cash drop violation

that had resulted in a loss.[1] Judge Sharp also observed that, even if Key had offered some evidence to establish that he and McBee were similarly situated, there was no evidence that Gonzalez, who made the decision to terminate Key, had actual knowledge of McBee's alleged violation. *Id.* at 8. Finally, Judge Sharp pointed out that Key failed to offer any evidence that the non-discriminatory reason for his termination forwarded by Advance–that Key committed a cash-drop violation that resulted in a loss–was pretextual. *Id.* at 8-9. Based on these deficiencies in Key's case, Judge Sharp granted Advance's motion for summary judgment.

## III. ANALYSIS.

### A. *Christiansburg Analysis.*

A prevailing defendant in an employment discrimination case may only be awarded attorneys' fees if the plaintiff's claim "was frivolous, unreasonable, or groundless," or, in the event "that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422 (1978). A claim is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

In cases in which the United States Court of Appeals for the Eleventh Circuit has "sustained findings of frivolity, plaintiffs have typically failed to 'introduce any evidence to support their claims.'" *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1176 (11th Cir. 2005)(quoting *Sullivan v. Sch. Bd. of Pinellas County,* 773 F.2d 1182, 1189 (11th Cir. 1985)). Other factors that may be relevant include the following: (1) whether the plaintiff established a *prima facie* case; (2)

[1] The violation McBee was alleged to have committed related solely to the $3,000.00 which was *not stolen* in the robbery. Doc. No. 40 at 7.

whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *Sullivan,* 773 F.2d at 1189.

Determinations of frivolity are to be made on a case-by-case basis. *Sullivan,* 773 F.2d at 1189. In *Christiansburg*, the Supreme Court cautioned as follows:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable.

*Christiansburg,* 434 U.S. at 421-22. "[A] plaintiff's claim should not be considered groundless or without foundation for the purpose of awarding fees to a prevailing defendant when the claims are meritorious enough to receive careful attention and review." *Walker v. NationsBank of Fla. N.A.,* 53 F.3d 1548, 1559 (11th Cir. 1995) (citing *Busby v. City of Orlando,* 931 F.2d 764, 787 (11th Cir. 1991); *O'Neal v. DeKalb County, Ga.,* 850 F.2d 653, 658 (11th Cir. 1988)).

1. Lack of Evidence.

To determine whether Key's claims were "frivolous, unreasonable, or groundless," I begin with the question of whether Key presented any evidence in support of his claims.

There is some evidence in the record that, arguably, could be construed to support the proposition that the practices followed by Advance employees were not consistent with its formal policies regarding discipline for cash drop violations. The deposition of Key was part of the record at summary judgment. Doc. No. 24. Key testified that there "was no specific" limit at which managers were to perform a cash drop, that the typical procedure that preceded performance

of a cash drop was a cashier's alerting the manager that he or she seemed to be accumulating "too much" cash in a particular register. *Id.* at 22, 25-26. Key testified that throughout the entire time of his training, this was the cash drop procedure. *Id.* at 26.

Key further testified that he understood the basis of his termination to be that he had allowed too much cash to accumulate in a register, and he was confused as to why a white employee who had committed the same infraction with respect to more money had not been terminated. *Id.* at 85-86. When opposing counsel presented him with a "cash handling best practices" document at his deposition, Key stated that it was the first time he was informed that a cash drop violation in combination with a cash loss could result in termination. Previously, he only understood his duties to include preventing too much cash from accumulating in a register, and he did not realize that grounds for immediate termination attached to this dereliction under certain circumstances. *Id.* at 87-88.

Another witness, Advance employee Dwayne Aycock, lent some support to Key's version of store policy. Aycock testified that, although managers were supposed to monitor the cash levels in the registers, cashiers were also supposed to give managers a courtesy notice of excessive amounts of cash accumulating in the registers. Doc. No. 22 at 17-18. In addition, Aycock explained that different Advance managers had "different ways of doing things" when monitoring the cash levels in registers and following cash drop procedures. *Id.* at 53.

The evidence regarding different understanding about and methods of complying with the cash drop procedures was some evidence that Advance did not consistently enforce its policies regarding how to monitor cash levels in registers. The factual dispute about whether McBee, a Caucasion supervisor, also left too much money in his register on the day of the robbery, but was

not terminated for this violation, provided additional support for Key's assertion that he was treated differently than a Caucasion supervisor. While this evidence was not sufficient to establish the elements of Key's claim, this is not a case in which Key failed to present any evidence in support of his claim. Although it appears under *Cordoba* that this finding is sufficient to resolve the motion for attorneys' fees under *Christiansburg*, I will address the other Sullivan factors in order to present a complete review of the relevant factors.

2. Prima Facie Case.

Based upon the decision by Judge Sharp, there is no doubt that Key failed to establish a *prima facie* claim of employment discrimination. This factor weighs in favor of an award of attorneys' fees.

3. Settlement Offer.

When a defendant makes only a nominal settlement offer, which is aimed purely at avoiding the expenses of protracted litigation, this factor militates in favor of a finding that the plaintiff's claims are frivolous. *Cordoba v. Dillard's, Inc.*, No. 6:01CV1132ORL19KRS, 2003 WL 21499011, at *6 (M.D. Fla. June 12, 2003), *rev'd on other grounds*, 419 F.3d 1169 (11th Cir. 2005). Three amounts must be compared to determine whether a settlement offer is nominal: (1) what the plaintiff demanded; (2) what the defendant offered as a settlement; and (3) what the defendant expected to save in legal expenses by settling rather than continuing to litigate. *Id.*

In this case, the parties have not presented the Court with evidence of the amount demanded and the amount offered in settlement. There is, therefore, insufficient information before the Court to assess this factor.

4. Stage of Litigation.

Judge Sharp disposed of this case with an order of summary judgment, prior to a full-blown trial on the merits. *Sullivan*, 773 F.2d at 1189. In doing so, however, he gave careful review to the parties' positions as shown in the ten-page summary judgment order. As reflected in that order, Judge Sharp considered several theories presented by Key. Although Judge Sharp ultimately found that Key had not produced sufficient evidence to support his claim, his careful review of the case weighs in favor of denying the motion for attorneys' fees.

5. Conclusion.

Key presented some evidence in support of his claims, and the Court gave careful review to the matter. This is sufficient to undercut the argument that Key's claim was frivolous, unreasonable, or groundless. The *Sullivan* factors also do not support an award of attorneys' fees because the first *Sullivan* factor in this case militates in favor of an award of attorneys' fees, the third militates against an award, and the second militates neither in favor of nor against such an award. Therefore, I recommend that the Court determine that Advance is not entitled to an attorneys' fee award pursuant to section 1988.

B. *Sanctions Under 28 U.S.C. § 1927.*

Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Because section 1927 is penal in nature, it must be strictly construed. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997). The United States Court of Appeals for the Eleventh Circuit has stated that "§ 1927 is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Id.* at

1396. Rather, the movant must show three things: (1) that the attorney engaged in unreasonable and vexatious conduct; (2) that the unreasonable and vexatious conduct multiplied the proceedings, and (3) that the dollar amount of the sanction bears a financial nexus to the excess proceedings. *Id.* "The statute was designed to sanction attorneys who 'willfully abuse the judicial process by conduct tantamount to bad faith.'" *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003)(quoting *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993)).

Advance argues that Key's attorneys unreasonably began litigation of this case despite a pretrial position statement given to them by Advance advising them that the case was meritless, and unreasonably continued the litigation despite their failure to develop evidence in discovery sufficient to present a *prima facie* case. However, as discussed in the foregoing *Christiansburg* analysis, Key did present some evidence in support of his claim. This evidence was carefully considered by the Court. Under these circumstances, I recommend that Key's lawyers not be sanctioned under 28 U.S.C. § 1927.

C. *Sanctions Under Rule 11*.

Courts assess Rule 11 sanctions under three circumstances: "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003)(emphasis omitted)(quoting *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001). For the reasons discussed in the *Christiansburg* analysis above, I recommend that the Court find that Rule 11 sanctions are not appropriate in this case.

## IV. RECOMMENDATION.

For the reasons stated above, I respectfully recommend that the Court **DENY** Defendant's Motion for Attorneys' Fees, doc. no. 50.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 25, 2005.

Karla R. Spaulding
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy